Merrimack, ⎰
April 7, 1925. ⎱

### ELIZABETH S. WEST, *Adm'x, v.* BOSTON & MAINE RAILROAD.

Expert testimony may be received but is not required, when the question relates
to a matter of common experience, observation or knowledge.

In an action for personal injuries brought by the injured person during his life-
time and prosecuted by his administrator after his decease as a result of the
injuries complained of, recovery may be had for the loss of earning capacity
of the deceased for the probable duration of his life had the injuries not been
suffered.

An instruction to the jury that the plaintiff could not be denied a verdict on the
ground of his own contributory negligence unless the jury were positively
convinced that he was to blame is a statement of the rule regarding the burden
of proof so erroneous and misleading as to necessitate the setting aside of the
verdict.

The rule that a retrial for the correction of errors should be limited to that part
of the case which might have been affected by the errors, is subject to the
qualification that as much more of the case must be retried as may be necessary
in order to afford the parties a fair trial.

The question of the scope of the new trial is one of fact for the trial court, subject
to revision by the supreme court upon the question whether there was evidence
to sustain the finding of the trial court.

BILL OF EXCEPTION, allowed by *Branch*, C. J.
The facts and questions of law are stated in the opinion.

*Robert W. Upton* and *Joseph C. Donovan* (*Mr. Upton* orally), for
the plaintiff.

*Demond, Woodworth, Sulloway & Rogers* (*Mr. Jonathan Piper*
orally), for the defendant.

PEASLEE, C. J. This is a suit for negligence, brought by an injured
employee, George M. West, in his lifetime, and prosecuted after his
death by his administratrix. The questions presented relate to the
submission to the jury of a certain issue as to fault of the defendant,

to the rule of damages given, and to instructions as to the burden of proof upon the issue of the fault of the plaintiff's decedent.

I. One ground of complaint was that the defendant maintained an improper staging. The locus was the defendant's freight car repair shop in Concord. A track ran through the building, and on either side there was a staging for the use of the workmen. The staging consisted of a single line of planks, resting upon brackets, and overlaying one another at each bracket. The brackets could be moved up and down, and the planks could be moved laterally, so as to accommodate the staging to the particular work in hand. Where the planks joined they were secured from falling by a chain passing around a part of the bracket, with one end attached to either plank. The chain had sufficient slack to permit the top plank to move sideways upon the lower one, thereby making it likely that the top one would tip if weight were applied on the overhanging side. At the ends of the staging, the single plank end rested upon one of a series of rods like rungs of a ladder. The plank was here secured by either one or two angle irons, attached to the bottom of the plank and projecting downwards behind the rod. If the plank was tipped sufficiently, the angle irons would clear the rod and afford no protection against the plank's being pulled off the rod. The accident was caused by a workman jumping upon the staging (as was the custom), tipping an overhanging plank, freeing the end in the manner above described and causing the plank to fall upon West.

It must be apparent to the ordinary person that a better security against the fall of the plank could well have been adopted. Whether it ought to have been was a question for the jury. The staging was not a temporary affair, but a part of the permanent arrangement of the work place. The chance of injury from a falling plank appears to have been considerable. The defendant's conduct in carefully securing the planks at all other points but the extreme ends is of itself evidence of the need of such precaution. Whether the use of the angle irons was or was not all that the ordinary man would have done was clearly for the jury to determine. While expert testimony, or evidence as to usage, could undoubtedly be received upon the subject, if the presiding justice deemed it to be useful (*Olgiati* v. *Company*, 80 N. H. 399; *Laird* v. *Railroad*, 80 N. H. 379; *Kelsea* v. *Stratford*, 80 N. H. 151; *Gardner* v. *Company*, 79 N. H. 454; *State* v. *Killeen*, 79 N. H. 201, 202, and cases cited), yet such proof is not required when the question relates to a matter of common experience, observation or knowledge. *Moran* v. *Railway*, 74 N. H. 501;

*State* v. *York,* 74 N. H. 125; *Wheeler* v. *Contoocook Mills,* 77 N. H. 551; *Casey* v. *Company,* 79 N. H. 42.

In this situation, the question which has been argued as to the sufficiency of the testimony of expert witnesses, or specialists, to prove fault in this respect, is immaterial. The case was one which could be sent to the jury without the introduction of such evidence. Submission of the issue does not depend upon the production of instructional proof. There was sufficient evidence of fault in the construction and maintenance of the staging, and the exception to the submission of the issue to the jury is overruled.

II. The defendant requested instructions to the effect that no recovery could be had for loss of earning capacity after the death of the injured party. The requests were denied and the jury were instructed to consider the probable duration of his life but for the injury, and his probable earning capacity for such period.

The question thus presented involves a consideration of the history of the common law and statutes of the state as related to any recovery, either for death or for damages suffered because of death, or for damage accruing after death. The defendant relies upon the application of the common-law rule, as generally declared, that the law will not undertake to value human life. "Legislation and jurisprudence have combined to perpetuate the extraordinary doctrine that the life of a free man cannot be made the subject of valuation, and under the domination of that dogmatic utterance, made earlier than the Roman Digest, reproduced therein, and echoed by the courts of all countries from then till now, the singular spectacle has been witnessed of courts sanctioning damages for short-lived pains, and refusing them for a life-long sorrow and the pecuniary losses consequent on the death of one from whom was derived support, comfort and even the necessary stays of life." 8 R. C. L. 719.

Its adoption into the common law was plainly in denial of the ancient rules of that system as to were-gilds, maegbotes and deodands. 2 Pol. & M. Hist. Eng. Law, 450, 459; Crabb's Eng. Law, 36. It was announced by Lord Ellenborough in a *nisi prius* decision in 1808 (*Baker* v. *Bolton,* 1 Camp. 493), and was apparently accepted without further consideration until the passage of Lord Campbell's act, in 1846, rendered it inoperative there as to most cases. Its application to a suit by a parent for loss of a child's services was upheld in 1873, by a divided court. *Osborn* v. *Gillett,* L. R. 8 Ex. 88.

In this country it seems to have been generally conceded that there is no sufficient reason for the establishment or the continuance

of such a doctrine. It has been constantly questioned, but usually adhered to. The matter was first considered in this state in *Wyatt* v. *Williams*, 43 N. H. 102. The opinion states the rule as the law, but the case was decided upon other grounds. That was a suit by a wife to recover her loss incident to an injury to her husband. As it appeared that he lived some time after the injury, it was conceded that the rule stated would not dispose of the case, and the decision against the plaintiff was put upon the ground that a wife had no right to a recovery for injuries to her husband.

There is no later decision resting upon the dicta found in *Wyatt* v. *Williams*, *supra*. It is true that it was cited with approval in *Chaloux* v. *Company*, 75 N. H. 281, but "other substantial reasons" were found for denying a recovery in that case. On the other hand, there has been frequent judicial criticism of the theory. In *State* v. *Railroad*, 52 N. H. 528, 548, attention is called to the dissenting opinion of Baron Bramwell in *Osborn* v. *Gillett*, *supra* and reference is made to the "supposed objection to such recovery."

"Under this system, the malicious destroyer of human life is liable to indictment and death, but not to a civil action, for ancient reasons difficult to be now discovered, possibly of theological origin — Exodus xxi, 12, 18, 19, 22, 23; Leviticus xxiv, 17, 18; Numbers xxxv, 31 — possibly derived from the difference between human life which no man owns, and other life which may be the subject of property." *Doe*, J. *Aldrich* v. *Wright*, 53 N. H. 398, 418.

In *Bedore* v. *Newton*, 54 N. H. 117, 119, *Ladd*, J., used the following language in speaking of the reasons assigned for the rule: "I must say, however, that I have never been able to comprehend their force or admit their soundness. That one person may have a direct pecuniary interest in the life of another, and so suffer a direct pecuniary damage as the immediate and necessary consequence of the act which destroys such life, is too plain to require argument or illustration. The pecuniary loss occasioned to the owner of a dumb animal by the careless or willful act which destroys its life is no more the natural, necessary and immediate result of the act, than the loss occasioned to a tenant *per autre vie* by the destruction of the human life upon which his estate depends."

In *Whittaker* v. *Warren*, 60 N. H. 20, whether one standing *in loco parentis* could recover for loss of service after the death of his foster child was left as "a question upon which we express no opinion."

It is plain that since the opinion in *Wyatt* v. *Williams*, 43 N. H. 102, was delivered there has been a judicial tendency to question

the soundness of the common-law rule there stated. There has also been a succession of legislative acts, each evidently intended to modify the theory of recovery there announced. In 1879 it was enacted that in case of death by "wrongful act or neglect of another, which, if death had not ensued, would have entitled the person injured to recover damages therefor, then, on the death of such person, his executor or administrator may, by suit brought within two years of such death, recover damages for the injury." Laws 1879, *c.* 35, *s.* 1.

This statute was construed in *Clark* v. *Manchester*, 62 N. H. 577. It was held that the statute did not give the survivors a new cause of action to recover for the damage done to them, but "for the injury to the deceased which resulted in and caused his death. They are for the injury which, if death had not ensued, would have entitled the party injured to recover therefor. The cause of action was not lost by death, but survives, and the rule of damages is not changed by death. If the plaintiff establishes by evidence the liability of the defendant he can recover damages upon the same grounds that the injured person, had he escaped death, might recover for the injury." *Ib.*, 584. The plain purport of this is that while damages are not given for the death, the fact of death is not to be used as a defence to an assessment of damages which might be recovered if the injured party survived.

One item of recovery by the injured party would be his loss of earning capacity. It being established that this has been wholly destroyed, no good reason appears why it could not be recovered for under this decision. To hold otherwise would be to decide that the fact of death could be used to reduce the damages otherwise recoverable. This is made plain by the next paragraph in the opinion wherein the cases from other jurisdictions holding that in the case of instant death there could be no recovery under such a statute are reviewed, and their soundness is denied. The concluding statement that "in all cases of injury caused by the wrongful act or neglect of another resulting in death, the cause of action survives, and damages are given" (p. 584), can have no other meaning than that the death is not to be used as a defense to damages otherwise recoverable.

Whatever doubt there might be as to this conclusion is cleared away by an examination of the authorities there relied upon. In the New York case it was said of the statute that "Its object was to remove certain disabilities or obstacles to a recovery in such cases, growing out of the rules of the common law that personal actions die

with the person, and that, when the act producing the injury amounts to a felony, the civil remedy is merged." *Brown* v. *Railroad*, 22 N. Y. 191, 195. In the Connecticut case, there was sharp criticism of the common-law rule and a holding that the statute removed the obstacle to a recovery for loss of prospective earning capacity. *Murphy* v. *Railroad*, 30 Conn. 184.

The brief opinion in *Corliss* v. *Railroad*, 63 N. H. 404, adds little or nothing to the discussion of the subject. It includes "loss of time" as one of the elements of recovery, but does not state the limitations thereon.

In 1887, the act of 1879 was repealed and a new statute was enacted. Laws 1887, *c.* 71. This broadened the scope of the recovery. It provided a recovery for injury to the estate as well as to the person of the deceased. It included the death itself as an element. *Ib., s.* 1. The opinion in *Clark* v. *Manchester, supra,* was not published until after this law was enacted. Whether the legislature had the benefit of this judicial construction of the act of 1879 to aid them in framing the new law cannot be ascertained. But in any event, it is evident that there was a purpose to still further broaden the scope of recovery.

In the meantime an act providing for a survival of all actions and causes of action had been passed. Laws 1885, *c.* 11. This act was not repealed by Laws 1887, *c.* 71, and under it an action could be maintained for injuries resulting in death, although not maintainable under the act of 1887 because of certain limitations contained therein. *French* v. *Mascoma Company*, 66 N. H. 90. What the measure of damages in that suit might be was a question not presented or considered.

In the revision of 1891, these statutes were repealed and the whole subject was treated in P. S., *c.* 191, *ss.* 8–13. In *Piper* v. *Railroad*, 75 N. H. 435, it was held that the provisions of sections 11 and 12, defining certain elements of damage to be considered and limiting the amount of recovery, apply only to suits brought by an administrator after the death of the injured party. The conclusion followed that in a suit brought in the lifetime of the decedent and prosecuted after his death by his administratrix, the damages were not limited by the statute. Here again, the question of what elements of loss could be recovered for was not presented, and is not touched upon in the opinion.

It is with this background, and in the light of this history, that the provisions here involved are to be considered. The statute reads:

"Actions of tort for physical injuries to the person — although inflicted by a person while committing a felony — and the causes of such actions, shall survive to the extent, and subject to the limitations, set forth in the five following sections, and not otherwise." P. S., *c.* 191, *s.* 8. The ensuing provision that the representative of the estate shall appear and prosecute a pending suit has been complied with. Under the decision in *Piper* v. *Railroad, supra,* it is settled that no other provisions of chapter 191 apply to this suit. Since that decision was announced the language of sections 11 and 13, so far as this question is involved, has been reënacted by the legislature. Laws 1913, *c.* 201; Laws 1923, *c.* 107. The question is not open for judicial reconsideration. *Waterman* v. *Lebanon,* 78 N. H. 23, 24, and cases cited.

It is argued that in this situation the conclusion follows that as to suits brought during the lifetime of the decedent the damages are limited as by the common-law rule before referred to, and that there can be no recovery for earning capacity except to the time of death. It is conceded that this conclusion would involve the idea that a backward step had been taken in this revision; but it is said that however improbable such action seems, it has so plainly been taken that the conclusion is inescapable.

It is said that the statute means that the administrator can recover only what the decedent could if still alive. This statement, frequently found in the cases, does not seem to dispose of the matter. If the decedent were still alive, he could recover for loss of earning capacity. But it is said that at a trial of that issue the defendant might show that by reason of the injury the plaintiff would live but a short time, and that therefore recovery by him for loss of earning capacity should be limited accordingly. This somewhat novel proposal that the defendant can in this way take advantage of his own wrong, has been advanced in a few decided cases. Its validity has been denied because "To admit such an answer is going a step beyond refusing compensation for loss of life. It is permitting a defendant to assert the excessiveness of his own tort to escape paying full compensation for the injury. This should not be permitted. If not permitted in an action by the injured party, it should not be allowed in an action by his legal representative." *Olivier* v. *Houghton &c. Company,* 138 Mich. 244. To the same effect are, *Maher* v. *Philadelphia &c. Company,* 181 Pa. St. 397; *Prairie &c. Company* v. *Kittrell,* 106 Ark. 150.

A plaintiff is entitled to recover for loss of earning capacity for the

remainder of his life. He owned that right for the balance of his days. If the suit is tried in his lifetime, his expectation of life is used in computation of the damages. If the trial is after his death the period of his life is fixed, and the defendant contends that recovery for loss of earning capacity is limited accordingly. If death ensued from some independent cause, the claim would be well founded. But when it has been caused by the defendant's wrong, the anomalous situation is presented that, if the argument is sound, the defendant takes an advantage from its own wrong. The question is not whether the administrator can recover for his decedent's death, but whether that death, caused by the defendant's wrong, can be used to cut down damage otherwise recoverable.

Recovery for death — for the deprivation of the right to live — may be a different thing from recovery for loss of capacity to earn money. Heretofore no distinction has been drawn in the decisions in this jurisdiction between these two. "Its economic rather than its sentimental value" (*Lane* v. *United &c. Company*, 90 Conn. 35) has not been considered. Whether in the suit instituted by an administrator for the benefit of certain relatives the recovery provided for by P. S., c. 191, s. 12, includes sentimental value, is a question which is not involved here.

In view of the authorities and of the history of our law upon this subject, it is deemed to be probable that the provision for a survival of the action found in P. S., c. 191, s. 8, was understood and intended to provide for a recovery by the administrator for the decedent's loss of earning capacity for the remainder of his life, as that life would have continued but for the defendant's wrong. There is no decision in this jurisdiction which depends upon a denial of these views. Even if it be assumed that the dictum in *Wyatt* v. *Williams*, 43 N. H. 102, states the common-law rule in this state, the succeeding legislation, the judicial criticism of the rule, and the construction put upon the act of 1879 in *Clark* v. *Manchester*, 62 N. H. 577, furnish sufficient evidence that the survival provided for by P. S., c. 191, ss. 8 and 9, was understood and intended to include the right to recover for loss of prospective earning capacity.

The further argument is advanced that if the foregoing construction is adopted there is no distinction between this suit and one brought by an administrator, and that therefore the discussion in *Piper* v. *Railroad*, 75 N. H. 435, is without point. There is a plain distinction between the cases. One is the cause of action of the injured party, which is made to survive. The other is a new cause of action, given

for the benefit of certain described parties. It is "a comparatively modern innovation." *Piper* v. *Railroad, supra,* 444.

It may be added that the practice under P. S., c. 191, ss. 8 and 9, for more than thirty years is understood to have been in accordance with the view here stated. While such practical construction cannot control the plain meaning of a statute, it is always treated as of importance in the solution of doubtful questions. "For laws are founded, in general, upon the perception of an evil, or a danger, or of a public want, and are often framed with such express reference to it as to leave a latent ambiguity in their expressions, easily solved by those who shared in the perceptions of the framers of the laws, but not apparent to after generations, who have lost, by the lapse of time, that key to the interpretation. Thus, if a reasonable doubt arise upon the words of a statute, whether a certain thing is embraced within its prohibition, evidence of the prevailing use or practice of that thing immediately after the passage of the statute, by the framers of it and the public in general, goes far to establish the proposition that it is not so included." *Concord Railroad* v. *Greely,* 17 N. H. 47, 63; *Hale* v. *Everett,* 53 N. H. 9, 171; *State* v. *Jackson,* 69 N. H. 511, 519. The exception as to the measure of damages is overruled.

III. The exception to the charge as to West's fault is urged upon two grounds. The first is that as West was an assistant foreman having supervisory powers, it was his duty so to regulate affairs that the accident would not occur, and that therefore it was incumbent upon the plaintiff to show affirmatively that fault in this respect was not the cause of the accident. No complaint is made of the way in which the matter of the defendant's fault was submitted to the jury. It is to be presumed that they were properly instructed as to what would constitute fault of the defendant, as related to West, and as to the plaintiff's duty to prove it. This alleged ground of exception is not presented by the case.

The second ground is that the instruction is an erroneous definition of the burden of proof. The jury were told among other things that they must be "positively convinced." Exception was taken to the use of this form of expression. The precise objection relied upon was called to the attention of the court.

This action upon the part of the complaining party takes the case out of the operation of the rule that "If the judge makes a mistake, and counsel perceiving it do not call his attention to it, pointing out an error which he may instantly correct, a verdict will not be disturbed on account of the error." *Paine* v. *Railway,* 58 N. H. 611,

615; *Bourrassa* v. *Railway*, 75 N. H. 359, 362, and cases cited; *Richard* v. *Company*, 79 N. H. 380; *Gardner* v. *Company*, 79 N. H. 452, 457, and cases cited. The plain implication from the language of these authorities is that where the error is called to the attention of the court, so that the objection may be considered and passed upon, the party is entitled to the full benefit of the position which has been seasonably taken. The authorities in this state are all to that effect.

In this situation the test of the validity of the exception is to inquire whether "the jury could have been misled." *Charrier* v. *Railroad*, 75 N. H. 59, 64; *Simoneau* v. *Railway*, 78 N. H. 363. If "upon the whole case, the tendency of the instruction to mislead the jury is so plain that it is probable justice may not have been done," the exception must be sustained. *Hanson* v. *Railroad*, 73 N. H. 395, 399. The plaintiff "must demonstrate that in all probability it could not work a harmful result. It is not sufficient that it may not have done so." *Gibson* v. *Boston*, 75 N. H. 405, 407. Where there seems a strong probability that the charge may have been understood to state an erroneous rule, "and that therefore there may have been a mistrial," the verdict is set aside. *Moody* v. *Perley*, 78 N. H. 17, 22.

It requires no argument to sustain the proposition that instructions to juries should be so expressed as to avoid chance of misunderstanding. Anything tending to such a result should be carefully guarded against. And while trifling errors are disregarded, and isolated statements may be qualified by other portions of the charge, yet when specific objection is made to a questionable instruction or phrase, added instructions removing the chance of misconception can so easily be given that the complaining party may stand upon a more critical examination of the language used in the charge than where there is only a general exception. Such a situation fairly calls for the application of the rule as stated in the authorities just cited.

It is urged that the phrase "positively convinced" is a correct statement of the law, because of the defendant's positive duty to prove the issue. The defect in this argument lies in its failure to consider what other meaning the language might convey. It is very evident that the idea the average person might well get from the words used would be that he must be quite certain upon the question. Standing alone and unqualified, the phrase cannot be deemed a correct definition or description of the burden of proof imposed in civil causes.

It is further said that when the language is considered in connection with the rest of the charge the expression could not be understood in its objectionable sense, but merely as calling attention to the fact that upon this issue the defendant had the burden.

After reading the clause of the statute — "there shall be no liability under this section of the statute for any injury to which it shall be made to appear by a preponderance of the evidence that the negligence of the plaintiff contributed" — and after reciting the acts of alleged contributory fault relied upon, the charge proceeds as follows: "The burden of proof upon this point rests upon the other side, and if you find that the railroad is at fault in either of the grounds which we have considered, then the plaintiff cannot be denied a recovery because of Mr. West's conduct unless you are positively convinced he was to blame; that is, if the evidence leaves you uncertain as to whether he was at fault or not, but you are convinced that the railroad was to blame, then the plaintiff is entitled to a verdict."

This was an instruction addressed to laymen. Its meaning is not determined as "by one skilled in dialectics." *Simoneau* v. *Railway*, 78 N. H. 363, 365. The question is what the language used might mean to jurors. As "a verdict is not set aside because, long after the trial, intensive study of the language of the court and severe critical analysis establishes a possibility of meaning not apparent upon the surface" (*Mason* v. *Railway*, 79 N. H. 300, 305), neither ought it to be sustained by a like process. The case of *Hanson* v. *Railway*, 73 N. H. 395, illustrates the latter proposition. The instructions there given were found upon critical scholastic and legalistic examination to be correct, as a technical statement of the abstract legal principles governing the case. But as it appeared that they were not so framed as to convey the proper thought to a jury with reasonable certainty, the verdict was set aside.

This exception presents a situation comparable with that in the *Hanson* case. It may be that a trained lawyer, reading the whole instruction, would conclude that it only meant proof by a balance of probability. But it is evident that jurors might well have understood otherwise, and that therefore it is "probable that justice may not have been done." *Hanson* v. *Railway, supra.* "There was danger that it might mislead jurors unacquainted with legal phraseology." *Oulette* v. *Company*, 79 N. H. 112, 115.

The alleged error having been promptly brought to the attention of the court, its effect is not to be explained away by showing that

upon a fine analysis of the charge as a whole the expression complained of ought to have been understood as having only a rather unusual meaning. Nor does the rule that the presiding justice may choose his own form of words to convey the thought to be expressed (*Tucker* v. *Peaslee*, 36 N. H. 167; *Richmond* v. *Bethlehem*, 79 N. H. 78; *Romani* v. *Railroad*, 81 N. H. 206, 209) help the situation. The question here is whether there is probability that the language may have conveyed to the jurors an erroneous conception of the law. As it appears that it may have done so, and as the matter was so presented to the court that the chance of an erroneous understanding might have been obviated by a brief explanatory statement, the exception must be sustained.

The error relates solely to the issue of West's fault. All the other issues having been properly tried and determined, the new trial will be limited to this question only.

*New trial of the decedent's fault.*

All concurred.

ON REHEARING. After the foregoing opinion was filed, the defendant moved for a rehearing upon the order limiting the scope of a new trial.

*Demond, Woodworth, Sulloway & Rogers*, for the defendant.

*Robert W. Upton*, for the plaintiff, furnished no brief.

PEASLEE, C. J. (The rule that a retrial for the correction of errors should be limited to that part of the case which might have been affected by the error, is subject to the qualification that as much more of the case must be retried as may be necessary in order to afford the parties a fair trial. The question what issues may have been affected by the error is usually one of law. It is properly dealt with in this court in the first instance. If not so considered, it becomes the duty of the trial court to pass upon it, as upon other questions of law and subject to exception.) Unfairness in a trial, caused by misconduct of jurors or counsel, may present a question of fact as to the extent of the wrong (*Moulton* v. *Langley*, *ante*, 138), but this exception to the usual rule is not material here.

The question how far beyond the correction of the error the new trial must go in order to afford a fair trial, is one of fact. It is not for this court, except as to the inquiry whether there is evidence to warrant a finding one way or the other.

The foregoing rules of procedure were followed in the cases in which the theory that new trials could be limited was first announced and applied in this state. *Lisbon* v. *Lyman*, 49 N. H. 553; *Janvrin* v. *Fogg*, 49 N. H. 340. They have generally been observed in the later cases. Where it appears that the error may have affected all the issues, the conclusion of law that there must be a complete new trial follows. *McBride* v. *Huckins*, 76 N. H. 206; *Laird* v. *Railroad*, 80 N. H. 58; *Dow* v. *Latham*, 80 N. H. 492. There is then no question of fact to be determined. If, in such a situation, the trial court finds that there should be a partial retrial only, the order will be set aside for error of law. *Doody* v. *Railroad*, 77 N. H. 161.

But a finding in the superior court upon the question of a partial retrial is conclusive here, if there was evidence upon which it could be made, or if the sufficiency or competency of the evidence is not made a ground for exception. *Ela* v. *Ela*, 72 N. H. 216; *Moulton* v. *Langley*, *ante*, 138. This is true whether the finding is in favor of a limited trial (*Morin* v. *Company*, 78 N. H. 567) or against it (*Milford Company* v. *Railroad*, 79 N. H. 525). The question whether a new trial may be limited is one of law; but whether it shall be is matter of fact.

In two cases the limitation of the trial was directed by this court. *Piper* v. *Railroad*, 75 N. H. 228; *Genest* v. *Company*, 75 N. H. 365. The propriety of such action was not questioned in either case, and the matter was not passed upon except inferentially. Upon a subsequent transfer of the earlier case, the question involved here was argued, but not decided. *Piper* v. *Railroad*, 75 N. H. 435, 446. In so far as these cases are precedents for deciding this question of fact as one of law, or for passing upon it in this court, they are contrary to the earlier authorities and to sound practice, and are not to be followed.

The order heretofore made in this case cannot be sustained. While it is entirely clear that the error for which the verdict was set aside could not have affected any issue but that of the decedent's fault, that alone is not enough to warrant an order for a limitation of the retrial. A question of fact remains undisposed of, and must be considered in the superior court. The order here should be for a new trial, without undertaking to settle whether it is or is not to include all the issues in the case. Such a general order is not to be understood as foreclosing the power of the superior court to act upon the subject indicated. It is not a final disposition of the case, or of the question of the extent of the new trial, except in cases where it appears that it was held as matter of law that the error may have affected

all the issues tried. The principle involved in *Tucker* v. *Lowe*, 79 N. H. 259, has no application to this situation.

*New trial.*

All concurred.