Hillsborough,  }
Dec. 1, 1936.  }

## RAOUL T. APRIL v. ARTHUR A. PERONT.

*William H. Barry* and *Frederick J. Gaffney* (*Mr. Gaffney* orally), for the plaintiff.

*Warren, Wilson, McLaughlin & Wiggin* (*Mr. Wiggin* orally), for the defendant.

MARBLE, J.   The plaintiff testified that he first consulted the defendant on February 16, 1931; that a tooth had bothered him for about a week and that he went to the defendant's office on that occasion not only to have that tooth extracted but to have the defendant examine all his teeth and do "whatever there was to be done."   It was the first time he had been to a dentist for treatment in five years.

The defendant, after his examination, expressed the opinion that two teeth (a lower right and an upper left) would have to come out. He extracted these teeth and then dismissed the plaintiff with directions as to the use of an antiseptic solution.   The plaintiff was able to work the next day but on February 20 he began to experience pain. This pain increased and on February 23 he consulted the defendant again.   Finding inflammation around the lower right wisdom tooth, the defendant x-rayed that tooth, painted the plaintiff's jaw with mercurochrome and told him to return after the x-ray plates had been developed.

The plaintiff called the next day as requested.   The defendant then reported that the wisdom tooth was sound but that there was a

lot of inflammation around it and he thought the best thing to do was to have it out. The plaintiff decided to wait a few days to see if his condition would not improve, but on February 29 his pain became so intense that he was able to wait no longer. He testified: "I went to the office ... I was crying out in pain ... and the moment that he [the defendant] opened my mouth he says 'Oh, yes, it is your wisdom tooth,' he says, 'it is abscessed'."

The wisdom tooth was then extracted, but the plaintiff continued to have "a grinding pain." The defendant made two calls upon him at his home that afternoon and evening and called again the following day. A physician was then consulted and the plaintiff was removed to the hospital for treatment. The soft tissues near the tonsils were found to be infected, and on March 5 a peritonsillar abscess was lanced. The plaintiff was discharged from the hospital on March 15 but returned on March 21 when his trouble was diagnosed as osteomyelitis.

The defendant testified that the wisdom tooth was sound only in the sense that it was not decayed, but that there was a local abscess between it and the molar which he extracted on February 16. He said: "I wanted to extract the two teeth to get a free drainage and destroy the abscess .... The gums were inflamed, spongy, and the alveolar process ... that holds those teeth firm in the jaw was absorbed, and left the teeth very loose, just holding by flesh and not by bone." He further testified that when a tooth is loose in this way, the space between the tooth and the gum forms a pocket for infection and that under such circumstances it is good dental practice to remove the tooth. The plaintiff testified in rebuttal that the tooth was not loose at the time it was extracted.

The only expert called by the plaintiff was the physician who took him to the hospital and later curetted his jawbone. This physician expressly disclaimed any qualification "as an expert on dentistry" but testified merely "as a general surgeon." He stated, subject to exception, that there is a principle in surgery never to remove a sound organ when it is surrounded by infected tissues; that the removal of a sound tooth from an infected area permits a chance for seepage and allows more space for the infection to get into the blood and become localized in the bone; that, in his opinion, the removal of the plaintiff's wisdom tooth caused the infection around the tonsils, and that the infection in the plaintiff's jaw was the cause of the infection of the bone which he curetted. He assumed apparently that the tooth was not only sound but firm. He did not indicate how the

infection could have been eliminated, nor did he profess to know the extent of the skill and knowledge possessed by the average dentist practicing in Nashua or similar communities.

Four dentists testified in behalf of the defendant. In answer to hypothetical questions based on the conditions described by the defendant each testified that proper practice required the removal of the tooth. Plaintiff's counsel failed on cross-examination to show by any of these dentists that it was not good dental practice to extract the tooth under the conditions described by the plaintiff.

A person who holds himself out as practicing a particular profession is only required to possess the knowledge and to exercise the care and skill of the ordinary practitioner of that profession in the same place or in similar localities. *McBride* v. *Huckins*, 76 N. H. 206; *Leighton* v. *Sargent*, 27 N. H. 460, 468. See also *Spead* v. *Tomlinson*, 73 N. H. 46, 50. The burden was on the plaintiff "to prove liability for malpractice" (*McQuaid* v. *Michou*, 85 N. H. 299, 300) and nowhere in the record is there any evidence that the defendant did not possess the learning and exercise the skill and care of the average dentist in Nashua.

This is not the ordinary negligence case where common knowledge may render unnecessary the production of evidence. The issues here raised involve matters "peculiarly within the knowledge of those who are skilled in dentistry" (*Krueger* v. *Chase*, 172 Wis. 163, 168); "common knowledge furnishes no criterion for judgment and evidence becomes indispensable" (*Russell* v. *Railroad*, 83 N. H. 246, 249; *L'Esperance* v. *Sherburne*, 85 N. H. 103, 110).

In the recent case of *Zulinsky* v. *Greenblat* (N. J.), 184 Atl. Rep. 807, 808, the court, after stating the rule that a dentist does not insure his patients against infection or the results which follow the extraction of teeth, holds that whether the conduct of the defendant dentist in that case conformed to the prescribed standard of care was a matter for expert testimony. See also *Rising* v. *Veatch*, 117 Cal. App. 404, 409; *Meador* v. *Arnold* (Ky.), 94 S. W. Rep. (2d), 626, 631; *Yates* v. *Gamble* (Minn.), 268 N. W. Rep. 670, 674; *Eggert* v. *Dramburg*, 197 Wis. 153.

Nor can this requirement be dispensed with in the present case merely because the defendant admitted on cross-examination that "a large laceration" caused by the extraction of a tooth may afford an opportunity for the seepage of infection. The problem still remains one of proper dental practice under the circumstances, and the correct solution of that problem depends upon the testimony

of those who have technical knowledge on the subject. Dr. Clarridge, a Nashua dentist called by the defendant, testified on cross-examination that the extraction of a tooth might open up new channels through which infection could extend to other parts of the mouth, but he also asserted definitely that he would extract a sound tooth embedded in inflammatory surroundings, "expecting to get drainage." No dentist testified that this would not be good dental practice.

It follows that since the plaintiff failed to adduce any evidence in support of a vital issue on which he had the burden of proof, the defendant's motion for a directed verdict should have been granted.

*Judgment for the defendant.*

PAGE, J., was absent: the others concurred.