Grafton
No. 79-010

JOHN B. KENNEDY & a.

v.

PAUL N. RICKER
d/b/a RICKER FUNERAL HOME, INC.

December 12, 1979

*Tesreau & Daschbach*, of Lebanon (*Joseph F. Daschbach* orally), for the plaintiffs.

*Hinkley & Donovan*, of Lancaster (*Walter D. Hinkley* orally), for the defendant.

DOUGLAS, J.   This case concerns the standard of care required of funeral directors sued for negligence, the requirements of jury instructions, and the sufficiency of certain evidence to withstand

defendant's motions for nonsuit, directed verdict, and judgment notwithstanding the verdict.

On March 5, 1976, the defendant, Paul Ricker, doing business as Ricker Funeral Home, Inc., directed a funeral service at Haverhill Congregational Church in North Haverhill. Before the funeral, James House, the defendant's employee, and Nelson Ricker, the defendant's father, arrived at the church with the casket. The casket had no conventional handles; its design required bearers to place their fingers in a groove that ran along the sides. House asked the plaintiff and one Lloyd Steeves to help House and Nelson Ricker move the casket from the hearse into the church. The plaintiff and Steeves complied. Without preliminary instructions from House concerning the method of carrying a handleless casket, and with no discussion on the subject, the four began to carry the 240-pound casket toward the church. In the process, the plaintiff, who supported a rear corner, either tripped or slipped on two steps. He lost his grip on the casket and it allegedly struck his right knee as it fell. The plaintiff allegedly suffered a ruptured tendon in his right knee and has undergone surgery and therapy.

The plaintiff sued Ricker Funeral Home, Inc., and three codefendants. After a trial, the jury awarded the plaintiff $18,000. The trial and the verdict gave rise to several exceptions on which the defendant funeral home has appealed. All questions of law were reserved and transferred by *Johnson,* J. We affirm.

The first major issue is whether the trial court erred in denying the defendant funeral home's trial motions for nonsuit and directed verdict. The basic argument is that the motions should have been granted because the evidence supporting the plaintiff's *prima facie* case was in several ways deficient. The defendant's first evidentiary argument is based on the rule that when a practicing professional is sued for negligence, he is held to the level of care and skill exercised by the ordinary practitioner. *April v. Peront,* 88 N.H. 309, 188 A. 457 (1936); *see Carrigan v. Sacred Heart Hospital,* 104 N.H. 73, 178 A.2d 502 (1962). Relying on *April* and on RSA 325:1 IV, the defendant asserts that funeral directing is a profession and that the plaintiff was therefore required to introduce testimony from other local funeral directors on the issue of standard of care.

We do not agree. RSA ch. 325 serves to establish minimum standards and procedures for the licensing of funeral directors in New Hampshire. The fact that the word "profession" is used in reference to funeral directing carries no more significance for the application of the tort standard of care in this case than do the words "business" or

"practice," which are also used. RSA 325:1 IV. We are not willing to recognize that all activities of a licensed occupation in New Hampshire are "professions" for purposes of the tort standard of care.

■ Determination of the proper standard of care in this case should focus on the nature of the activity involved. In *April*, a dental malpractice case, expert testimony was required concerning dentistry skills. Although there are some aspects of undertaking that might require expert testimony, in this case we are concerned merely with the carrying of a casket. Dentistry requires years of training; bearing a casket does not. A jury's common knowledge and experience could easily guide it to a determination of whether instructions should have been given on the method of carriage. *West v. Boston & Maine Railroad*, 81 N.H. 522, 129 A. 768 (1925). No expert testimony, therefore, was required.

■ The defendant also contends that there was insufficient nonexpert proof to support a conclusion that the defendant was negligent in failing to provide proper carrying instructions. This contention is not supported by the record. There was evidence that the plaintiff had never seen or carried a handleless casket before the date of his injury and that, because of the lack of handles, he was essentially carrying the casket on his fingertips. There was also evidence that Steeves was concerned about how difficult it would be to hold on to the handleless casket. Finally, there was expert testimony that handleless caskets tend to be unstable and that the defendant himself had in the past given instructions to people carrying caskets both with and without handles. In light of this evidence, a jury could properly find that the defendant had a duty to instruct the carriers in the use of a handleless casket, and that he was negligent for failing to do so.

■ ■ The defendant next argues that there was insufficient medical evidence to support a finding regarding causation. The proof was conflicting on this point, but conflict does not amount to insufficiency. There was evidence that the ruptured tendon was not diagnosed until five months after the accident, but Dr. Hall testified that the delay was caused by the knee's swollen condition. When the swelling subsided, he diagnosed the rupture. There was also evidence that a physical therapist's June examination of the plaintiff's knee revealed a normal range of motion, but the jury heard Dr. Hall testify that his June examination did not disclose normal motion. Directly on the issue of causation, Dr. Hall stated that the plaintiff's injury could have resulted from one of several causes, but he also said that the most

common cause of a ruptured tendon in the knee is a direct blow to the knee. The resolution of these conflicts was the province of the jury.

It was the trial court's duty to consider the evidence in the light most favorable to the plaintiff in weighing the defendant's motions for nonsuit and directed verdict. *Muzzy v. Rockingham County Trust Co.*, 113 N.H. 520, 309 A.2d 893 (1973). *See generally Kierstead v. Betley Chevrolet Buick, Inc.*, 118 N.H. 493, 389 A.2d 429 (1978); *Amabello v. Colonial Motors*, 117 N.H. 556, 374 A.2d 1182 (1977). Because the plaintiff presented evidence sufficient to support the elements of his case, the motions were properly denied.

The defendant's second major argument is that the court erred in refusing to give certain requests for jury instructions. In deciding such a claim, we inquire whether the charge, as given, adequately set out the applicable law. *Poulin v. Provost*, 114 N.H. 263, 319 A.2d 296 (1974). Once the applicable law has been set out along with each party's claims, further instructions are in the trial court's discretion. *Allen v. State*, 110 N.H. 42, 260 A.2d 454 (1969). In this case the trial judge in his charge correctly described negligence as lack of due care, discussed the nature of causation and pointed out that negligence without causation does not result in liability. He also accurately discussed comparative negligence and the parties' burdens of proof.

The defendant also excepted to the following portion of the court's charge on the ground that it created the impression that carrying the casket in question was dangerous.

> [The defendant] and his employees [were] under the obligation to take reasonable steps to see to it that his other employees or other persons that he asks to assist are told of dangers which he either knew or should have known existed. In other words, to give them proper warning and to give them instructions so that these people who are employees or assistants, even if they are volunteers, can be reasonably safe, and he is held to the standard of care of a person who practices his profession in this area.

As we have already noted, the defendant, on the facts of this case, was not a professional for tort law purposes and was not bound to any professional standard of care. If the trial judge's statement of the law on this point affected the jury at all, it could only have helped the defendant. We read jury charges in context and as a whole, *Poulin v. Provost*, 114 N.H. 263, 319 A.2d 296 (1974), and we see no reason to

suppose that the above-quoted section destroyed the jury's understanding that the principles stated were to be considered only if the jury first found as a fact that danger existed.

The defendant's third claim of error is that the trial judge incorrectly denied the motion to interrogate the jury. It is firmly settled that the trial court, in order to determine whether the case has been properly tried may, in its discretion, recall and interrogate the jury regarding the basis for its verdict. *Eichel v. Payeur*, 106 N.H. 484, 214 A.2d 116 (1965). Broad discretion rests with the trial court in exercising this power. *Bothwick v. LaBelle*, 115 N.H. 279, 339 A.2d 29 (1975). After the jury returned its verdicts, defense counsel brought to the court's attention that a television show containing a segment that allegedly attacked various funeral home practices had been broadcast that morning. The defendant contends that the jury should have been interrogated regarding what effect, if any, the broadcast had upon their deliberations. The court had properly instructed the jury to decide the case based on the evidence adduced at trial, and based on this record, the court's denial of the motion to interrogate was not an abuse of discretion. *State v. Belkner*, 117 N.H. 462, 374 A.2d 938 (1977); *Bothwick v. LaBelle supra*.

The defendant's fourth citation of error is that after the plaintiff rested its case against the defendant Ricker, the plaintiff elicited further evidence detrimental to Ricker while cross-examining the witness of one of Ricker's codefendants. We note that cross-examination of a witness is a matter of right. *Alford v. United States*, 282 U.S. 687 (1931). Plaintiff's cross-examination in this case touched upon matters brought out on direct examination. Absent abuse, which we do not find here, the scope of cross-examination is within the discretion of the trial court. *Saurman v. Liberty*, 116 N.H. 73, 354 A.2d 132 (1976); *Dodge v. Clair*, 105 N.H. 276, 198 A.2d 12 (1964).

Finally the defendant excepted to the denial of his motion for judgment notwithstanding the verdict. There was sufficient evidence in the record to support the trial court's denial of the motion and we will not upset it. *Reid v. Spadone Machine Co.;* 119 N.H. 198, 404 A.2d 1094 (1979). *See generally Kierstead v. Betley Chevrolet-Buick, Inc.*, 118 N.H. 493, 389 A.2d 429 (1978).

*Exceptions overruled.*

KING, J., did not sit; the others concurred.