Department of Employment Security
No. 87-159

## APPEAL OF ALBERT AND EDWARD BOSSELAIT
## (New Hampshire Department of Employment Security)

July 8, 1988

*Bruce E. Friedman,* Franklin Pierce Law Center Civil Practice Clinic, of Concord, by brief and orally, for the plaintiffs.

*Stephen E. Merrill,* attorney general (*David S. Peck,* assistant attorney general, on the brief and orally), for the State.

SOUTER, J.   Two formerly part-time employees bring this appeal under RSA 282-A:67, I, from an order of an appeal tribunal of the department of employment security (DES), which denied them unemployment compensation because they were not "ready, willing and able" to accept and perform full-time work. We affirm.

The plaintiffs, Albert and Edward Bosselait, are brothers, who were 76 and 79 years old, respectively, at the time they filed their claims for benefits. For 22 years they shared a single full-time janitor's position at the Spaulding Youth Center in Northfield, each of them working four hours a day. It is not disputed that during the relevant time Spaulding was an employer within the meaning of the unemployment compensation act, see RSA 282-A:8, although it took advantage of its status as a charitable corporation to become in effect a self-insurer against any claims its employees might bring for benefits on account of unemployment, see RSA 282-A:69, II.

In 1986, Spaulding contracted with a third party for custodial services and eliminated about 35 positions, including the job held jointly by the plaintiffs. Following their discharge on June 30, 1986, the plaintiffs applied to DES for unemployment compensation benefits, and when a certifying officer rejected their claims, see RSA 282-A:44, they applied to an appeal tribunal within the department, see RSA 282-A:53. The tribunal held an evidentiary hearing, at which the plaintiffs were assisted by a lay represent-ative, and each of them testified about limitations on his capacity to work. Mr. Albert Bosselait represented that he had a "weak back [that] goes out of joint when least expected," and his brother indicated that he was limited by partial eyesight and angina. They indicated forthrightly that they would not accept new jobs calling for more than four hours of work each day. Mr. Edward Bosselait testified that "we don't dare to work more than four hours a day at our age," and said that he was "not gonna play with [his] health."

When the tribunal called attention to the statutory eligibility requirement that an applicant must be "available for and seeking permanent, full-time work," see RSA 282-A:31, I(d), Mr. Edward Bosselait responded that "I think [the statute is] discriminating against old fellas . . . old people." The tribunal found each plaintiff ineligible because he was "not ready, willing and able" to accept full-time work as the statute required. See RSA 282-A:31, I(c).

After the appeal tribunal's decision, the plaintiffs obtained legal counsel, who requested the commissioner of DES to reopen the case before the tribunal, based on State and federal equal protection claims and general allegations that subparagraph (d) violated State and federal statutes prohibiting discrimination against mothers,

the handicapped, and people over 65. When the commissioner refused to reopen, the plaintiffs appealed the appeal tribunal decision to the appellate division of DES, *see* RSA 282-A:62, purporting to raise a State equal protection claim, and asserting a governmental obligation to provide unemployment compensation to mothers, the handicapped, and the elderly, who may be limited to part-time work. (The procedural history from appeal tribunal to appellate division is complicated in the extreme. *See Appeal of Albert Bosselait & a.*, N.H. Sup. Ct. No. 86-430. Fortunately, its details have no bearing on the present appeal.)

The appellate division noted that it was admitted that the plaintiffs were physically able to work only four hours a day, but rejected claims that subparagraph (d) violated the State equal protection standard and conflicted with § 504 of the federal Rehabilitation Act of 1973, 29 U.S.C.A. § 794 (Supp. 1988). The appeal to this court under RSA 282-A:67 ensued. As we have explained elsewhere, *see Appeal of Kelly*, 129 N.H. 462, 466, 529 A.2d 935, 937 (1987), our jurisdiction is limited to reviewing the record of the appeal tribunal for errors of law, *see* RSA 282-A:67, IV, except insofar as that record may have been clarified or the issues limited in the course of subsequent proceedings before the appellate division.

The plaintiffs have challenged the denial of benefits by seeking to raise three issues before us. They claim that subparagraph (d) violates the federal Age Discrimination Act of 1975, 42 U.S.C.A. § 6101 *et seq.* (1983); that it violates the federal Rehabilitation Act of 1973, 29 U.S.C.A. § 791 *et seq.*; and that it violates State and federal constitutional guarantees of equal protection of the laws. Not one of these issues, however, has been both timely raised below and preserved for consideration on appeal.

Under our Rule 10(1)(c), a party appealing from an administrative agency is limited to the questions "set forth in the petition [for appeal] or fairly comprised therein. . . ." The petition in this case sets out two questions, each of them raising an issue of equal protection under the State and National Constitutions. Any federal statutory issues were thus waived, although it does not appear that they were ever adequately raised before the appeal tribunal.

The record below contains no reference to the Age Discrimination Act, 42 U.S.C.A. § 6101 *et seq.*, and although Mr. Edward Bosselait stated before the appeal tribunal that he thought subparagraph (d) discriminated against the elderly, his remark could not reasonably have been understood as initiating a statutory claim under federal law. The review of proceedings before the appeal tribunal is

likewise devoid of any reference to a claim under the Rehabilitation Act, 29 U.S.C.A. § 791 *et seq*. While the plaintiffs referred to their physical limitations, their remarks, again, were insufficient to put the tribunal on notice that it should address the factual as well as legal issues peculiar to such a federal statutory claim.

Thus it appears from the record that the plaintiffs not only failed to raise the statutory issues in their appeal petition to us, but failed to raise them initially in the trial forum of the appeal tribunal. Their belated attempts to inject the statutory issues into the appeal at this point therefore run afoul of our rule that "issues [must be] raised at the earliest possible time, because trial forums should have a full opportunity to come to sound conclusions and to correct [claimed] errors in the first instance." *Sklar Realty v. Town of Merrimack*, 125 N.H. 32, 328, 480 A.2d 149, 153 (1984) (citation omitted). To this we may add that unless a claim is raised in the trial forum, there is no opportunity for a party to develop a factual record supporting his theory of relief, or to make an offer of proof sufficient to justify a demand to introduce relevant evidence and preserve an issue for appeal. (The commissioner of DES is, of course, authorized by RSA 282-A:60 to permit a claimant to reopen a case within the time allowed in order to raise a new issue before an appeal tribunal, if the claimant has a reasonable explanation for his previous failure to raise the issue and can give an indication of legal and factual support for the position he wishes to take.)

■ *Sklar* is equally applicable, moreover, to bar consideration of the equal protection questions that the plaintiffs purport to preserve by listing them in this appeal petition, for these constitutional issues were never adequately raised before the appeal tribunal. While, as we noted above, one plaintiff expressed the view that subparagraph (d) was discriminatory against the aged, neither he nor anyone on his behalf expressed the view that the statute was therefore invalid as working a denial of equal protection. Since many statutes are candidates for enlightened amendment without thereby being in any way unconstitutional, the plaintiff's remark was not sufficient to put anyone on notice that he thereby meant to raise a constitutional issue. (We have not overlooked the fact that the plaintiffs sought to raise a State equal protection claim in the appellate division. The appellate division, however, is not the forum of trial where issues may be raised initially in accordance with *Sklar* and like cases. The division provides an intermediate administrative appeal, in which issues previously raised may be waived or narrowed; it does not provide an opportunity to raise new

issues for the first time. *See Appeal of Kelly,* 129 N.H. at 466, 529 A.2d at 937.)

We must in candor say, therefore, that if the state of the record had been adequately disclosed to us we would not have accepted this appeal. *See* SUP. CT. R. 10. Because, however, the appellate division saw fit to deal with an issue under the Rehabilitation Act and to conclude that there was no violation of the State equal protection guarantee, and because similar claims may be raised in the future, there is some utility in speaking to these issues here, rather than merely entering the summary affirmance that would be proper under Rule 25(1)(d).

Consideration of the claim under the Rehabilitation Act begins with the text of § 504, which is codified as 29 U.S.C.A. § 794 (Supp. 1988):

> "No otherwise qualified individual with handicaps . . . shall, solely by reason of his handicap . . . by denied the benefits of . . . any program . . . receiving Federal financial assistance."

"Individual with handicap" is defined as a person who has a

> "physical or mental impairment which substantially limits one or more of [a] person's major life activities,"

*id.* § 706(8)(B)(i), such as

> "caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."

29 C.F.R. § 1613.702(c) (1987).

While it is not disputed that the unemployment compensation scheme receives such federal assistance as to render § 504 applicable, and while it is not denied that the back, heart, and eyesight problems described by the plaintiffs may qualify as handicaps under § 706(8)(B)(i), it is by no means obvious that the State statutory restriction of benefits to those who can and will accept full-time employment violates the federal statute. Here it is enough to identify two barriers to drawing any such conclusion in this case.

There is, first, the language of § 504, that no otherwise qualified individual may be denied benefits "solely by reason of his handicap." 29 U.S.C.A. § 794. Before this provision can be applied to invalidate State action denying a benefit there must, at the very least, be evidence adequate to support a finding of fact that the handicap is the sole reason for the denial. That is to say, proof of

an exclusive causal link between handicap and denial of benefits is a necessary condition for finding a violation of § 504. (It is not in any simple sense a sufficient condition, however. *See infra.*) To satisfy this necessary condition in the present case, the plaintiffs would be required to prove not only that they suffered from handicaps but that the handicaps, and the handicaps alone, rendered them unable to work a full day and, hence, unable to satisfy subparagraph (d).

The actual evidence, however, falls short of any such proof. It is neither common knowledge, nor do the plaintiffs claim, that a weak back, poor eyesight, or angina necessarily prevents an individual who can work four hours a day from working eight. The back was described as going out of joint "when least expected," and there was no indication that the eyesight got worse in the course of the day. Nor was there any testimony that the risk of angina symptoms varied with the duration, as distinguished from the intensity, of work. The nature of angina is, in any case, a subject sufficiently uncommon to everyday experience as to require expert medical testimony before any conclusions can be drawn about its effect on the capacity to do a given job over a given time. *See April v. Peront,* 88 N.H. 309, 311, 188 A. 457, 458 (1936). All that is left, then, is the candid testimony that the plaintiffs "don't dare to work more than four hours a day at [their ages]" and would not "play with [their] health," which would most reasonably be interpreted to mean that men close to eighty do not have the capacity for eight hours of physical labor every day without risk to their health. Since the plaintiffs have made no claim that the risks suggested by the phrase "old age" amounted collectively to a handicap within the meaning of 29 U.S.C.A. § 706(8)(B)(i), a finder of fact could only conclude that if the plaintiffs were unable to satisfy the full-time work requirement, the reason was not a handicap, but the plaintiffs' ages. The appeal tribunal, therefore, would have had no evidentiary basis to find a violation of § 504 proceeding from the enforcement of subparagraph (d).

The second barrier to statutory relief appears if we assume for argument, and contrary to the evidence just discussed, that "handicaps" did preclude the plaintiffs from seeking and accepting full-time jobs. Again, our focus is on the statutory condition that a denial of benefits to an "otherwise qualified" applicant, 29 U.S.C.A. § 794, be "solely by reason of . . . handicap," *id.,* before relief can be granted. Here, however, our concern is not with the need to prove a causal connection in fact between a handicap and ineligibility, but with a handicapped plaintiff's burden to

demonstrate that he is "otherwise qualified" because the handicap is not a permissible basis for denying him the benefit in question.

A difficulty inherent in this burden arises once we recognize that some benefits may be provided for purposes that cannot be achieved by extending them to individuals with certain handicaps. As one example that has already been subject to litigation, there are legitimate reasons to deny nursing education assistance to a person whose deafness cannot be corrected or compensated for sufficiently to permit her to act effectively and safely in the circumstances that nurses routinely confront. *See Southeastern Community College v. Davis,* 442 U.S. 397, 411 (1979).

Hence, a line must be drawn between legitimate eligibility standards, as exemplified in the case of the deaf nurse, and criteria that would violate § 504; and plaintiffs claiming a § 504 violation must prove something more than a mere causal link between handicap and denial of benefit. The Supreme Court of the United States has indicated that in cases involving the application of a facially neutral standard imposed without discriminatory animus, a § 504 violation may be established by evidence that the eligibility standard produces a disparate adverse impact with a "particular exclusionary" effect on a class of the handicapped, *Alexander v. Choate,* 469 U.S. 287, 302 (1985), which is unreasonable, *see id.* at 299 n.19, either because there is no reasonable basis for the exclusion itself when considered in relation to an appropriate governmental objective, *see id.* at 307–08, or because the exclusion could be eliminated without unreasonable expense, *see Southeastern Community College v. Davis, supra* at 412–13; *Strathie v. Department of Transp.,* 716 F.2d 227, 231 (3rd Cir. 1983); *but see Southeastern Community College v. Davis, supra* at 410–11 (no congressional intent to impose an affirmative action obligation on all recipients of federal funds).

▮ Taking this as the rule, the present plaintiffs would not be entitled to relief under § 504 without demonstrating to the appropriate finder of fact that, although subparagraph (d) is facially neutral with respect to the handicapped (since it merely disqualifies those who are unable or unwilling to work full-time), it nonetheless has an exclusionary effect that falls with particular disparity on the handicapped. They would also have to satisfy the burden of demonstrating either that the full-time work criterion is unjustifiable by reference to any legitimate governmental objective, or that it would not be unreasonably costly or burdensome to expand the benefited class to include all the handicapped. These are, of course, tall evidentiary orders, which the plaintiffs did not

attempt to address, or even request an opportunity to address, before the appeal tribunal, as the forum of trial. They are consequently entitled to claim no relief under § 504.

We come to more familiar ground in reaching the issue under the State Constitution, part I, article 12, raised by the plaintiffs' contention that a denial of equal protection inheres in the restriction of benefits to those who are able and willing to work full-time. In addressing this State equal protection claim, the plaintiffs are principally concerned to persuade us to review the effect of subparagraph (d) under the so-called middle-tier test of *Carson v. Maurer*, 120 N.H. 925, 931–33, 424 A.2d 825, 830–31 (1980), which requires that legislation restricting the enjoyment of an "important substantive right" be reasonable, not arbitrary, and justified by a "fair and substantial" relationship to the effectuation of a legitimate governmental objective.

The plaintiffs offer three arguments to support their claim that entitlement to unemployment compensation should be treated as an important substantive right for purposes of *Carson*. None of them is persuasive.

First, the plaintiffs argue for heightened scrutiny on the ground that part-time workers are taxed like all other workers to provide funds for paying unemployment compensation, but claimants from that class of part-time workers are refused benefits to which workers are generally entitled. The argument carries the plaintiffs nowhere, however, for it rests on false assumptions of fact and law. First, workers like the plaintiffs are not taxed; their employers are taxed. *See* RSA 282-A:69, I. Nor are the employers' taxes in reality paid from the employees' pockets. While we may assume that unemployment compensation expenses, like other expenses of doing business, affect an employer's capacity and willingness to pay a given level of wages, it is not demonstrably apparent that employers' taxes generally (or, in this case, the employer's payments of benefits) are taken dollar-for-dollar from funds that would otherwise be expended in wages. The second mistaken assumption is that those who work only part-time are denied benefits when they are unemployed. On the contrary, former part-time workers, like former full-time employees, are not disqualified unless they are unable or unwilling to take a full-time job as a condition of receiving unemployment compensation. That is to say, the members of the class affected by subparagraph (d) are not identified by the hours they used to work, but by the hours they can and will agree to work in the immediate future.

■ The second argument for heightened scrutiny purportedly rests on an analogy with federal cases applying a middle-tier test under the fourteenth amendment for reviewing disparate treatment based on gender, because of its immutability as a characteristic. *See, e.g., Califano v. Goldfarb*, 430 U.S. 199 (1977). The plaintiffs argue that their age is as immutable as gender, and because subparagraph (d) is said to have a disparate effect on the elderly, it should receive middle-tier scrutiny. Whatever may be the merits of the analogy, the short answer to any suggestion that a distinction based on age merits middle-tier review under the National Constitution is answered by *Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 313–14 (1976), in which the Supreme Court of the United States rejected the argument for strict scrutiny of age discrimination claims, in favor of the rational basis test. *See Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 440–41 (1985) (collecting cases on levels of fourteenth amendment equal protection review); *see also Washington v. Davis*, 426 U.S. 229, 242 (1976) (non-dispositive significance of merely disparate impact in equal protection review). There is thus no basis to claim that State equal protection should grant the middle-tier scrutiny that federal equal protection would provide, because federal equal protection does not provide it.

Finally, the plaintiffs try to identify their interests with the rights on which middle-tier review was premised in *Carson*, 120 N.H. at 925, 424 A.2d at 825, and *Estabrook v. American Hoist & Derrick, Inc.*, 127 N.H. 162, 498 A.2d 741 (1985). But to see why the present case bears no comparison with *Carson* and *Estabrook*, it is only necessary to recall that those cases dealt with selective restrictions on common law rights of action to recover for injuries. Here, on the contrary, we are not dealing with any common law right of recovery that was superseded by the unemployment compensation scheme, for the latter is entirely a creation of statute and dependent upon statute for its content. *Armstrong v. Adams*, 113 N.H. 370, 373, 308 A.2d 844, 846 (1973); *Pomponio v. State*, 106 N.H. 273, 274, 209 A.2d 733, 734 (1965). *Carson* and *Estabrook* therefore have no bearing on the case.

■ If the analogy with *Carson* and *Estabrook* fails, however, comparisons with other prior cases are ready at hand. In *Arsenault v. Abbott Furniture Corp.*, 122 N.H. 521, 522, 446 A.2d 1174, 1175 (1982), we considered an equal protection challenge to the benefit scheme under the workers' compensation act, RSA chapter 281, which we resolved by application of the rational basis test. We thus applied to alleged disparities in compensation for injuries related

to employment the same test we have since applied to equal protection challenges to compensation schedules in *Petition of State Employees' Assoc. & Goulette*, 129 N.H. 536, 540, 529 A.2d 968, 971 (1987). *Goulette*'s holding exemplified a broader rule that legislation merely regulating economic benefits and burdens, with no other significant feature, is reviewable under the rational basis criterion when challenged under the equal protection clause for allegedly producing disparate treatment, or under the due process clause on the ground that even its impartial application is invalid. *See Boehner v. State*, 122 N.H. 79, 83–84, 441 A.2d 1146, 1148 (1982) (quoting *Opinion of the Justices*, 117 N.H. 749, 758, 379 A.2d 782, 788 (1977)); *see also Cleburne v. Cleburne Learning Center, Inc.*, 473 U.S. at 440 (rational basis test applied to review "social or economic legislation" on fourteenth amendment equal protection review).

A challenge to differential treatment in the distribution of benefits under an unemployment compensation scheme thus presents a classic occasion to apply the rational basis test, and the burden therefore rests on the plaintiffs to demonstrate that the restriction of benefits to those able and willing to accept full-time work is not rationally related to the advancement of any legitimate governmental interest. *See Boehner v. State, supra* at 84, 441 A.2d at 1149. But this they cannot do, for the State has identified two objectives that the legislature could find both to be served by the restriction in question and to further the admittedly proper State policy of mitigating the effects of involuntary unemployment.

The first such objective is to conserve the available funds for the benefit of those who need them most, by restricting eligibility for benefits to those who need them most. Those who need the funds most are those with no sources of income except their paychecks. Such claimants are likely to seek full-time work, because they will need the level of pay that only full-time work yields. Conversely, the legislature could infer that those who can or will work only part-time probably have another source of income or support that provides some mitigation for the effects of unemployment. The legislature could, in short, conclude that the full-time work requirement would effectively select the most needy applicants, for whose benefit the unemployment compensation funds should be conserved.

The second objective that could be found to be served by subparagraph (d) is that of limiting the unemployment itself to the briefest possible period, and thus limiting the demand for benefits accordingly. Because the applicant who restricts himself to part-time work thereby isolates himself from a significant, and probably

the major, segment of the job market, the legislature was entitled to infer that an applicant ready to take full-time work has a better chance of getting some job within any given period of time. Once the applicant has a job, he can of course look about for an alternative schedule more to his liking, since he and his family will not be subjected to unusual privation while he does so, and no employer will be taxed to compensate him while he makes the further search. But pending a successful completion of that further search, the legislative goals of limiting unemployment and its social costs will be served by inducing the unemployed to accept work full-time if that is what turns up first.

█ The scheme as so rationalized will not, admittedly, produce an exact equality of benefits and burdens among the variously identifiable segments of employable people. But the standard of equal protection makes no such demand, *Boehner v. State*, 122 N.H. at 85, 441 A.2d at 1149–50, any more than it requires a court reviewing the effects of unemployment compensation to ignore the other societal benefits, such as social security, that are available to responsible and commendable job applicants like the plaintiffs, whose age prevents their acceptance of full-time work.

*Affirmed.*

All concurred.