## PETER CASTNER v. DANIEL SLIKER.

1. In a suit brought for injury received in an affray or personal combat between two parties, it is proper to show the attending circumstances. They often affect and characterize the transaction, and as such are part of it, though not the act of either party. It was material to show whether the defendant when attacked was alone or surrounded by persons who could aid him if his life or personal safety were in peril, and whether those persons, or any of them were friendly to him, and declarations made by them at the time were proper evidence on that point. In such case it is proper to show that a bystander interfered by act or speech—and proving the act or speech is proving such interference. But the proof is only proof of the fact that the words were spoken, and not of the truth of anything as stated in them.

2. The question how did the plaintiff appear—did he appear sober or otherwise, was proper. It is not a question that requires an expert. It is one of that class, the answer to which depends upon facts observed, and the inference from them, where they are so connected that they cannot be separated.

3. The statute requires that all persons licensed in this state as physicians or surgeons, shall be skilled both in medicine and surgery, and in anatomy, and the physician who was examined on the trial was therefore competent as an expert, to give an opinion in answer to the question propounded, " How could such injury be prevented ?"

4. False representations, by third persons, of threats, not sworn to by

the plaintiff, could not justify the defendant in putting out the plaintiff's eyes, in an affray, when it was not required for his own safety; nor could they mitigate the damages. The testimony was properly rejected as irrelevant.

5. It is the right and duty of a judge to comment upon the evidence, and in cases where he thinks it required, for the promotion of justice, to give his views upon the weight of it, provided he leaves it to the jury to decide upon their own views of it.

On writ of error to the Supreme Court.

For case and opinion of Supreme Court, see *ante* 95.

For plaintiff in error, *J. G. Shipman.*

For defendant, *Theodore Runyon* and *J. M. Robeson.*

THE CHANCELLOR. This was an action for assault and battery, in which the putting out the eyes of the plaintiff was alleged as part of the damages. To a plea of *son assault demesne*, the plaintiff replied that the defendant used more force than was required, on which issue was joined. The suit was in the Warren County Circuit Court, and on the trial exceptions were taken to the rulings and charge of the Chief Justice, by whom that court was held. The Supreme Court, on writ of error, affirmed the judgment.

On the trial the main questions were, whether the putting out the eyes of the plaintiff was intentionally done, and whether the violence used by the defendant, Castner, which resulted in destroying both eyes of the plaintiff was proper and necessary for his defence against the assault of the plaintiff? The affray was a fight in the bar-room of a country tavern, in the presence of a number of people, one of whom, Jacob Coleman, went there in company with the defendant.

Peter Petty, one of the witnesses, stated the details of the fight, and testified that after the defendant had thrown the plaintiff on the floor, and was sitting upon him, he, Petty, endeavored to take the defendant off the plaintiff, and

called on others to assist him. The witness was then asked by the counsel of the plantiff, "What did Coleman say?" to which he answered, "Coleman said let them be—let him halloo enough." The question was objected to by the defendant, and the first exception was to the admission of it. The ground of objection was, that it was the declaration of a third person.

For all affrays of this kind it is proper to show the attending circumstances; they often affect and characterize the transaction, and as such are part of it, though not the act of either party. It was material to them whether the defendant, when attacked, was alone or surrounded by persons who could aid him if his life or personal safety were in peril. And it was proper to show whether these persons, or any of them were friendly to him, and declarations made by them at the time were proper evidence on that point. In such cases it is proper to show that a bystander interfered by act or speech, and proving the act or speech, is proving such interference. But the proof is only proof of the fact that the words were spoken, and not of the truth of anything as stated in them. The only purpose for which these words were or could be used, was to show that Coleman declared himself on the side of the defendant. This fact was proper to be shown, and it was shown by legal evidence.

The court permitted the plaintiff to ask a witness, "How did the plaintiff appear? Did he appear sober or otherwise?" To this the defendant's counsel excepted, on the ground that it was the expression of an opinion only. This evidently is not a question that requires an expert. It is one of a class of questions constantly and properly asked of any witness; questions the answer to which depends upon facts observed, and the inference from them, where these are so connected that they cannot be separated. Any person of common sense and ordinary capacity for observation can answer the question, whether any one seemed angry or frightened or drunk, but many could not pick out the facts from which the conclusion was formed. It could seldom be found

whether a person was sober or drunk, if such evidence was not allowed. , It is the constant and established practice to permit it.

The court permitted the physician who attended the plaintiff after the injury, and examined his eyes, to be asked this question, " How could such injury be prevented ?" This was excepted to on the ground that it required the expression of an opinion which could only be asked of an expert. And that a physician is skilled in disease and medicine only, and that a surgeon or oculist was the proper expert. ·

The witness said he was a physician. This, in common parlance, means one skilled in both medicine and surgery. The statute of the state on the subject, requires that any one receiving license to practice as a physician or surgeon, shall be skilled both in medicine and surgery, and in anatomy. If the witness was a physician in these acceptations of the term, he was an expert in the very matters required for this opinion, anatomy and surgery. The question was legal and proper.

The defendant, by his counsel, offered to prove : that two or three different persons, in the course of two years, and within two months of this occurrence, told the defendant that he must take care of plaintiff; that he (plaintiff) threatened to whip him, and that he could kill him in two minutes ; that defendant had on several occasions left places to avoid meeting with plaintiff; that defendant expected to show further, that plaintiff had declared to several persons, that he could whip defendant with a hand tied behind ·his back, and could kill the rascal ; that he first used his threats three or four years ago, and that he had repeated them until within two or three months of the occurrence ; would further prove that plaintiff was a fighting man of great prowess; that people were afraid of him, and in consequence of the defendant being afraid of him, he did not want to fight.

The plaintiff's counsel objected to this evidence as irrelevant, and the court sustained the objection, and refused to

let the evidence be given, and the defendant, by his counsel, excepted to this opinion.

This offer was not to prove that the plaintiff had threatened to whip the defendant, but that others had told the defendant so; and to support the offer, counsel said they expected to prove that the plaintiff had said that he *could* do it; that he was a fighting man, and that the defendant was afraid of him.

False representations by third persons of threats not sworn by the plaintiff, could not justify the defendant in putting out the plaintiff's eyes in an affray, when it was not required for his own safety; nor could they mitigate the damages; the evidence was irrelevant.

The last exception is to the charge or summing up of the judge to the jury. He said: "If you believe that the loss of the plaintiff's eyesight was the result of an intentional act on part of the defendant, I cannot perceive how you can hesitate to find in favor of the plaintiff. To take away the eyesight of an adversary, could only be justified by imminent danger of great bodily harm. It is difficult to imagine how, under the ordinary conditions of a private combat, such extreme violence could be justified. In this case there did not appear to be the faintest excuse for resorting to so dire a necessity, and *if*, consequently, *you agree with me*, that none of the necessities of self-defence existed at the occurrence in question, to justify the resort to such an act, *and* that the defendant wilfully and knowingly inflicted that incurable wound, you will find a verdict against him."

This is a mere charge upon the facts and evidence, with an expression of the opinion of the judge upon the weight of evidence, as to the fact whether there existed any necessity for destroying the defendant's eyes. He said that the faintest necessity did not appear, and he distinctly instructed the jury, *that if they agree with him* on that point, *and* if they find the act intentional, they should find for the plaintiff. This instruction implied that it was their duty to decide whether it was justified by the necessity of the case, and

that if they did not agree with him, their verdict was to be for the plaintiff. No jury could have understood it otherwise.

It is the right and duty of a judge to comment upon the evidence, and in cases where he thinks it required for the promotion of justice, to give his views upon the weight of it, provided he leaves it to them to decide, upon their own views of it. This is too well settled by repeated decisions, to be now called in question.

The judgment must be affirmed.

*For affirmance*—The CHANCELLOR, BEDLE, DALRIMPLE, SCUDDER, VAN SYCKEL, CLEMENT, KENNEDY, OGDEN, OLDEN, WALES. 10.

*For reversal*—None.