ALBERT GRAMALDI, PLAINTIFF, v. PETER J. ZEGLIO, ABRAHAM JULIUS AND JULIUS LINKE, DEFENDANTS.

Submitted November 6, 1924—Decided June 15, 1925.

Malpractice—Physician—Patient Received Regular and Ordinary Professional Care—Infection Set in, Causing Permanent Impairment of Use of Arm—Other Physicians Testified That They Would Have Treated Case Differently—This is Not Sufficient—Neither May Physicians be Placed in Position of Guaranteeing Cure—Case Dismissed.

On plaintiff's rule to show cause.

Before GUMMERE, CHIEF JUSTICE, and Justices PARKER and KATZENBACH.

For the plaintiff, *Richard Doherty*.

For the defendants, *Edwards & Smith* (*Edwin F. Smith*, of counsel).

PER CURIAM.

This case is before us on a plaintiff's rule to show cause. The question involved is whether the trial court ruled properly in directing the jury to return a verdict in favor of one of the above defendants, Peter Zeglio. The suit was instituted by the plaintiff, Gramaldi, against three physicians for malpractice. The evidence showed that on July 9th, 1922, Gramaldi was in front of the station of the Central Railroad Company, at Plainfield, New Jersey. He was with a friend by the name of Lang. They were in a Ford car waiting for Mrs. Lang to return from New York. When Mrs. Lang did not return on the train arriving at Plainfield at ten-fifty-three P. M., Mr. Lang suggested that they leave the station. Gramaldi volunteered to crank the car. While attempting to do so the crank flew back and struck his wrist. He was injured. His wrist was bent back and the bones above the

wrist broken. He was taken to the Muhlenberg Hospital in Plainfield. There were four people at the station who testified that the bone or bones did not protrude through the flesh at the time of the injury, and the hand was not soiled. Upon reaching the hospital he was received by two young physicians, internes, Abraham Julius and Julius Linke. Gramaldi contended these internes caused a simple fracture to result in a compound fracture by their unskillful manipulation of his arm. As a result of this compound fracture, infection set in which produced a disease known as osteomyelitus, which resulted in the loss of the use of the plaintiff's arm. On the day of the accident the defendant Peter Zeglio was the visiting surgeon at the hospital. His assistant was Dr. Malatesta. Upon the arrival of Gramaldi to the hospital his clothing about the arm was removed. Dr. Julius attempted to get Dr. Zeglio. He could not reach him. He did, however, reach Dr. Malatesta, who came to the hospital within five minutes from the time of receiving the call. The defendants contended that nothing had been done to the arm in the meantime. They diagnosed the injury as a compound dislocation of the ulna. They testified at the trial that the bone was sticking out through a wound at the wrist. The hand was dirty and greasy. There was also a compound fracture of the radius. Dr. Malatesta and the internes administered ether to Gramaldi. His arm was scrubbed and washed. The wound was saturated with benzine and iodine. Sterile cloths were used. Manipulation was applied. The bones were slipped back into place. The wound made by the protruding bone was so jagged that a stitch was required. After this the patient was put to bed. Dr. Zeglio did not see the plaintiff until the following day. When he came to the hospital on the moning of July 10th he examined the chart, received a history of the case, and looked at the patient. Gramaldi had no fever. He saw him again the next day. The plaintiff complained of pain. His temperature had risen. The splints were removed. His arm was found slightly swollen about the wrist. Some serum was

exuding from the wound on the palmar surface of the hand. The wound was opened. The stitch taken out. A drain was inserted to prevent infection. The wound was redressed. X-rays were taken. On July 12th Dr. Zeglio again saw the plaintiff. The splints were taken off. The arm was more swollen and slightly redder. Pus was mixed with the exuding serum. The wound was cleaned. Another drain was inserted. The testimony showed that infection is never preventable. All that can be done is to assist nature in throwing it off. Infection comes from outside sources. It also comes from the blood itself. From a culture taken and examined in the laboratory of the hospital the existence of staphylococci and striptococci were discovered, but no gas bacillus. The same treatment was continued. The infection apparently disappeared as the temperature of the plaintiff became normal, on July 15th, and continued normal until the case passed from the observation of Dr. Zeglio, who was succeeded on August 1st as visiting surgeon by Dr. B. V. D. Hedges. At the time Dr. Hedges became the visiting surgeon there was no symptom of periostitis of the ulna. Later, the condition of Gramaldi's arm became worse. Osteomyelitis developed. The plaintiff insisted upon leaving the hospital on August 22d, against the advice of the physicians. He went to Bellevue Hospital, in the city of New York. The surgeons there advised amputation of the arm. He would not consent to this. Deep incisions were then made to drain the arm and check infection. These were successful. The arm was saved, but its use impaired. The plaintiff suffered greatly. His ability to work has been lessened as a result of the accident. Misfortune has overtaken him. It does not necessarily follow, however, that someone is responsible for his condition, and must respond in damages for his suffering and reduced earning power. The skill and care a physician is required to give a patient is that ordinarily possessed and exercised by others in the profession. The most recent case to this effect is the case of *Lolli* v. *Gray*, 3 *N. J. Adv. R.* 622, in which the opinion was written by Chancellor Walker. A physician is not a guaran-

tor without express contract of the good effects of his treatment, and he only undertakes to do what can ordinarily be done under similar circumstances. *Ely* v. *Wilbur*, 49 *N. J. L.* 685.

The record in this case comprises five hundred and sixty-two pages. It is almost a medical treatise on the subject of infection. Physicians and surgeons of high standing in the profession were witnesses. The evidence offered in behalf of the plaintiff was opinion evidence to the effect that a different course of treatment should have been followed. The defendant's witnesses approved the course taken. The plaintiff's expert witness said that large incisions should have been made in the plaintiff's arm when the infection appeared. These incisions would have opened the entire arm. The defendants' experts considered the draining of the wound as was done the proper treatment. All admitted that infection is likely to arise in any case. It can come from a condition of the blood, as well as from an outside source.

At the conclusion of the testimony motions were made in behalf of all the defendants to direct a verdict in their favor. This motion was denied as to Dr. Linke and Dr. Julius. With the propriety of this ruling we have nothing to do. It is not before us. The motion was granted as to Dr. Zeglio. The correctness of this ruling is before us. We are of the opinion that the trial judge ruled properly when he granted this motion. The testimony, in its most favorable aspect for the plaintiff, failed to show, in our opinion, that Dr. Zeglio did any negligent act which caused the infection. The testimony showed that treatment of an infected arm by draining, as was done in the present case, was a well-recognized and standard from of treatment. The fact that the plaintiff introduced evidence of physicians and surgeons that they would have made incisions in the arm which would have laid it open from wrist to elbow is not evidence of malpractice. Surgeons of eminence frequently differ in their opinions as to the treatment to be used in a given case. To permit a jury to pass upon the question of malpractice because testi-

mony is given by physicians that they would have used a different treatment from the one prescribed or followed would be to make a physician or surgeon a guarantor of the success of his treatment in every case. If he fails to restore his patient he must face a law suit with its accompanying annoyances and expenses. If the plaintiff's position be sound a jury must pass upon the question whether the treatment given was correct or not. As the plaintiff did not respond to the treatment given, and his arm become restored to its condition prior to the fracture, it could be expected that a jury would reach the conclusion that some other treatment of the condition which arose should have been applied. The result would be to return a verdict for the plaintiff, notwithstanding the same infection might have followed the other kind of treatment. If such were the law there would be few physicians and surgeons who would undertake to treat a case. For every failure to effect a cure would lay the basis for a law suit.

It takes more than the opinion of one or more physicians or surgeons that the treatment followed in a given case should have been different to lay a foundation for malpractice. The present case is typical of what frequently occurs. The defendant Dr. Zeglio has been a physician and surgeon since 1882. He is a graduate of the College of Physicians and Surgeons of New York City. A reading of his testimony shows that he is a man of profound learning. His testimony is clear, concise and convincing. It shows a mastery of the subject. To his learning is added an experience of over forty years. The hospital to which the plaintiff was taken was a charitable institution. The amount paid by the plaintiff almost nominal. Dr. Zeglio was giving gratuitously his services as visiting surgeon. What he did the eminent physicians and surgeons elsewhere are doing. Those who are taken to the hospitals get the best of care at a minimum of cost. The indigent receive the same care and attention as the rich. It is possible to do this largely through the gratuitous services rendered by the leading physicians and surgeons of a com-

munity. In some instances the results hoped for from the treatment prescribed may not be obtained. Cures cannot in all cases be accomplished. To make a physician or surgeon liable for failure to effect a cure, a plaintiff must bring himself within the law as above defined. This the plaintiff failed to do. A case of malpractice cannot be proven by the testimony of a few physicians or surgeons that they would have used some other treatment than the one used, in the absence of testimony from which it can be inferred that the defendant failed to give to the case that skill and care ordinarily possessed and exercised by others in the profession. The trial judge correctly, in our opinion, granted the motion to direct a verdict for Dr. Zeglio.

The rule to show cause is discharged.