64 N.J. Super. 242 (1960)
165 A.2d 850
DAVID FREUD AND PATRICK PITTALA, T/A AIRSHIP COCKTAIL LOUNGE, LICENSEES-APPELLANTS,
v.
WILLIAM HOWE DAVIS, DIRECTOR, DIVISION OF ALCOHOLIC BEVERAGE CONTROL, ETC., RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 28, 1960.
Decided December 2, 1960.
*244 Before Judges GOLDMANN, FOLEY and LABRECQUE.
Mr. Newton M. Roemer argued the cause for appellants.
Mr. David M. Satz, Jr., Assistant Attorney-General, argued the cause for respondent (Mr. David D. Furman, Attorney-General, attorney; Mr. Samuel B. Helfand, Deputy Attorney-General, of counsel).
*245 The opinion of the court was delivered by GOLDMANN, S.J.A.D.
This appeal by the holders of a plenary retail consumption liquor license seeks a reversal of an order entered by the Director of the Division of Alcoholic Beverage Control, suspending their license for 35 days. A consent order staying the suspension was entered by this court pending appeal.
The Division had charged appellants with violating Rules 1 and 24 of State Regulation No. 20. Rule 1 provides:
"No licensee shall sell, serve or deliver or allow, permit or suffer the sale, service or delivery of any alcoholic beverage, directly or indirectly * * * to any person actually or apparently intoxicated, or allow, permit or suffer the consumption of any alcoholic beverage by any such person in or upon the licensed premises."
And Rule 24 provides, in pertinent part:
"No licensee shall * * * allow, permit or suffer any actually or apparently intoxicated person to work in any capacity in or upon the licensed premises."
The licensees pleaded not guilty. After a full hearing, the Division hearer found that the licensees had permitted the sale or service of alcoholic beverages to an apparently intoxicated person, one Alverjous Johnson, and allowed him to work in and upon their licensed premises while apparently intoxicated, in violation of the quoted rules. He recommended a 35-day suspension.
The licensees filed written exceptions with the Director, arguing that the Division had failed to prove by a preponderance of the believable evidence that they had permitted the sale and service of alcoholic beverages to Johnson while he was apparently intoxicated, and that Johnson, who had accompanied the tavern pianist on his drums while the Division agents were present, was not working on the premises. They also contended the penalty was excessive. The Director concluded that the evidence clearly established that drinks were served to the drummer while he was apparently intoxicated, and that he was then working on the premises. He *246 found the licensees guilty as charged and imposed the 35-day suspension recommended by the hearer.
Appellants argue that the findings of the Director are not based on legally sufficient evidence in a substantial sense, and therefore the suspension order should be reversed.
This court held in Hornauer v. Division of Alcoholic Beverage Control, 40 N.J. Super. 501, 504 (1956), that the generally accepted gauge of administrative factual finality is whether the factual findings are supported by substantial evidence. Ordinarily, the court will not resolve conflicting evidence independently of the factual conclusion of the respondent agency. The conventional formula for judicial application of the substantial evidence rule is that there must be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 477, 71 S.Ct. 456, 459, 95 L.Ed. 456 (1951). As the court said in that case, respondent is an agency "presumably equipped or informed by experience to deal with a specialized field of knowledge, whose findings within that field carried the authority of an expertness which courts do not possess and therefore must respect." And see New Jersey Bell Tel. Co. v. Communications Workers, etc., 5 N.J. 354, 377-9 (1950). The question is: Could a reasonable man, acting reasonably, have reached the decision sought to be reviewed, from the evidence found in the entire record, including the inferences to be drawn therefrom? See Stason, "`Substantial Evidence' in Administrative Law," 89 U. Pa. L. Rev. 1026, 1038 (1941); Stern, "Review of Findings of Administrators, Judges and Juries: A Comparative Analysis," 58 Harv. L. Rev. 70, 89 (1944).
The choice of accepting or rejecting the testimony of witnesses rests with the administrative agency, and where such choice is reasonably made, it is conclusive on appeal. We canvass the record, not to balance the persuasiveness of the evidence on one side as against the other, but in order to determine whether a reasonable mind might accept the evidence *247 as adequate to support the conclusion and, if so, to sustain it. Hornauer, above, 40 N.J. Super., at page 506.
Appellants do not challenge the reasonableness of the "apparently intoxicated" provision of either of the agency rules in question. There was conflicting evidence as to whether Johnson, the drummer, was apparently intoxicated. The two agents who investigated the licensed premises said he was; Johnson, as well as the pianist who was employed at the premises, the bartender, and one of the licensees said that he was not. After weighing the evidence, the Director decided not to accept as believable the testimony of appellants' witnesses. We do not find the decision arbitrary or capricious; his findings are supported by substantial evidence.
It is suggested that the Division agents could not have positively determined that Johnson was apparently intoxicated. We have held that the average witness of ordinary intelligence, although lacking special skill, knowledge and experience, but who has had the opportunity of observation, may testify whether a person was sober or intoxicated. State v. Guerrido, 60 N.J. Super. 505, 511 (App. Div. 1960); State v. Pichadou, 34 N.J. Super. 177, 180-1 (App. Div. 1955). As our highest court said almost a century ago, it is "the constant and established practice" to permit lay opinion evidence on the question of intoxication. Castner v. Sliker, 33 N.J.L. 507, 509-510 (E. & A. 1869). The agents here were, at the very least, average witnesses of ordinary intelligence, who had many times in the course of their investigations undoubtedly had the opportunity to observe whether certain persons were sober or intoxicated.
The testimony of the agents established the well-recognized indicia of observable manifestations of intoxication; their description of Johnson's person, speech, gait and deportment led inevitably to the finding of apparent intoxication. Additionally, Johnson admitted to having had at least five drinks of gin in a period of less than two hours. As was said in State v. Pichadou, above, experience indicates that such witnesses do not exaggerate their estimates.
*248 Appellants allege that the testimony given by the agents, who had initially visited the licensed premises on a complaint that it was "an alleged hangout for females who solicit males for immoral purposes," stemmed from a desire to satisfy their "power urge," because they had found no evidence of the activity they had hoped to find and punish. There is not the slightest proof to support the assertion, with its implied charge that the agents deliberately fabricated their testimony.
Disciplinary proceedings against liquor licensees are civil in nature and require proof by a preponderance of the believable evidence only. Butler Oak Tavern v. Division of Alcoholic Beverage Control, 20 N.J. 373, 378 (1956); Hornauer v. Division of Alcoholic Beverage Control, above, 40 N.J. Super., at page 503. There is substantial support for the agency finding of apparent intoxication, and accordingly we will not disturb it.
It remains to be considered whether Johnson was permitted to work in or upon the licensed premises while apparently intoxicated, in violation of Rule 24 of State Regulation No. 20.
The Division has consistently construed "work" as embracing all persons whose services are utilized in furtherance of the licensed business, notwithstanding the absence of a technical employer-employee relationship. That construction was considered logical and approved in Kravis v. Hock, 137 N.J.L. 252, 255 (Sup. Ct. 1948), albeit in a different setting. Appellants, although admitting that "work," as used in Rule 24, is to be liberally interpreted, urge that the word be construed to mean "something undertaken for gain," as distinguished from "something done for pleasure, sport or immediate gratification." However, the administrative interpretation long given the rule by the agency charged with its enforcement, and the view expressed in Kravis, are commanding.
It is argued that the Division failed to prove that Johnson was actually employed by the licensees (this is admitted *249 by the Division), or that he was working within the legal definition of that term. Further, there is no evidence that Johnson's drum-playing and singing, while accompanying the hired pianist, was authorized by the licensees in furtherance of their business.
We are not dealing here with a situation where a tavern patron on the spur of the moment satisfies his urge to perform. Johnson was not a patron and his was not an impromptu performance. He had come to appellants' cocktail lounge for the admitted purpose of playing his drums, bringing his own instruments with him. He said he had performed there on two or three prior occasions, apparently with appellants' permission and acquiescence. This was confirmed by the bartender and the pianist. The licensee who testified admitted that he did not permit other patrons "to sing or entertain in the same sense that Mr. Johnson did." Johnson was therefore an entertainer, working in the tavern, and permitted to play in furtherance of appellants' business. The fact that he received no compensation from the licensees for this work is of no moment.
We hold that Johnson's playing was "work" within the intendment of the rule, and that appellants permitted him to work while apparently intoxicated.
The suspension is affirmed.