Solid Waste Management Council
No. 88-452

*In re* APPEAL OF WORKING ON WASTE
(New Hampshire Solid Waste Management Council)

July 9, 1990

*Backus, Meyer & Solomon,* of Manchester (*Robert A. Backus* on the brief and orally), for Working on Waste.

*Brown, Olson & Wilson,* of Concord (*Robert A. Olson* on the brief and orally), for NH/VT Solid Waste Project.

*John P. Arnold,* attorney general (*Anne E. Renner,* assistant attorney general, on the brief and orally), for the Solid Waste Management Council.

THAYER, J. In this appeal from an administrative ruling, the appellant, Working On Waste (WOW) (a New Hampshire citizen's organization), claims (1) that the New Hampshire Solid Waste Management Council (Council) abused its discretion in upholding a decision of the New Hampshire Department of Environmental Services Waste Management Division (Division) that authorized modification of a solid waste facility permit without a public comment period or public hearing, and (2) that the Council erred as a matter of law in refusing to grant a rehearing on this issue. We affirm.

The record indicates that in March of 1987, the Division issued a permit to appellee NH/VT Solid Waste Project (Project), RSA 149-M:10; N.H. ADMIN. RULES, He-P 1901.04(g)(4), to "construct and operate" a facility in Newport for the disposal of ash residue produced by a refuse-to-energy plant operated by the Project. The permit authorized the construction of at least one disposal area, divided into four quadrants or "stages" to be built singly, but in no particular sequence. The Project's permit application, however, proposed, and it was apparently understood by the parties, that construction would commence in the southwest stage or "Stage I."

The permit also listed construction and operation specifications designed to protect the local environment. It required, *inter alia,* that the Project submit certain construction and operation plans, as well as groundwater "sampling and analytical criteria", thirty days

prior to commencing construction, and that there exist at least a six-foot separation between the seasonal high groundwater table and the bottom protective lining of each stage. At least with respect to the northwest stage ("Stage II"), the Project apparently had intended to introduce land fill to comply with this separation requirement, although the permit itself did not explicitly call for the use of fill.

In April 1987, WOW and the Project appealed the permit to the Council, which upheld it subject to certain conditions. The record, however, does not indicate whether or not any further appeal was taken from this ruling.

Preparatory construction on Stage I began the following summer, but was ordered halted by the New Hampshire Water Supply and Pollution Control Division in October due to what that division characterized as "erosion control" problems. During the winter of 1987-88, with construction still halted, the Project became aware that the groundwater level in Stage I was higher than had originally been anticipated, and, consequently, asked the Division's permission to alter the original plan by beginning construction in Stage II instead. In addition, the Project requested that the Division clarify the permit schedule requirements for submission of its plans and groundwater criteria.

In a letter dated May 12, 1988, the Division authorized the Project to begin construction in Stage II, and to defer its submissions until appropriate points during the course of construction. The Division concluded that

> "[b]ecause these permit modifications (1) do not alter the facility design criteria, (2) do not alter the required facility performance standards, (3) do not alter the required content, detail or quality of permit compliance submittals, (4) incorporate and appropriately consider all updated information furnished by the permittee . . . and (5) provide the [Division] with appropriate project time management controls, as needed to adequately review and respond to submittals, it is the [Division's] determination that these modifications do *not* constitute changes which shall result in a significant environmental effect. Therefore, in accordance with New Hampshire Solid Waste Rule He-P 1901.04(h), such modifications do not require a public comment period or hearing. Accordingly, the below listed permit modifications shall be effective immediately."

(Emphasis in original.)

The appellant appealed these modifications to the Council, alleging, *inter alia*, that they "substantially weakened the permit, threatened the availability of regulatory control should problems arise in the future and precluded consideration of alternatives to the ashfill site," and thus, having been issued without a public comment period or public hearing, were "in violation of law," N.H. ADMIN. RULES, He-P 1901.04.

The Council held a hearing on June 16, 1988, to consider the appellant's claims, and on July 14 upheld the Division's decision. Apparently relying on the June 16 hearing testimony of Division officials, the Council found in its July 14 ruling that the new submissions schedule would "permit the Division to conduct a more thorough review of submittals based on the most current information regarding site conditions," and that the change in the order of stage construction had "no environmental impact." The Council noted that the six-foot separation requirement would survive the modifications intact, "using substantially the same construction design [for Stage II] as was originally permitted." Thus, the Council ruled that since the modifications would cause no "significant environmental impact," the Division was not required to provide a public comment period or public hearings prior to approving them, He-P 1901.04(h).

WOW moved for a rehearing on August 2, reiterating its previous claims, and adding the claim that the fill materials the Project had proposed to use might contain toxic substances, which would create a "significant environmental impact" given the modified permit, thus requiring the Council to vacate the modifications. (In a separate proceeding, the Division subsequently denied WOW's request for a hearing on the land fill issue, the appeal of which apparently was pending at the time of this appeal.)

On October 27, 1988, the Council ruled that, as the fill issue was "not germane to the Council's July 14 decision, and [was] outside the scope of this appeal process," and as WOW had "not raised additional information related to the issues it originally raised," there was "no good cause for a rehearing under [RSA] 541:3."

On appeal to this court from the Council's July 14 and October 27 decisions, WOW claims that evidence of potentially toxic fill material constituted "new information" requiring a rehearing as a matter of law, RSA 541:3, and that the Council abused its discretion in failing to find that the permit modifications constituted a "significant environmental impact", He-P 1901.04(h). As we find, however, that the record adequately supports the Council's July 14 findings and that

the Council correctly ruled that WOW improperly raised the issue of potentially toxic land fill in its motion for rehearing, we affirm the Council's denial of that motion, as well as its decision affirming the Division's permit modifications.

 As we have made plain in the past, RSA 541:13 requires that "[an administrative agency's] findings of fact must be treated as *prima facie* reasonable. RSA 541:13. The administrative action must be affirmed unless it rests upon an error of law or unless the plaintiff carries [its] burden to demonstrate 'by a clear preponderance' that the Board's resolution of an essential issue of fact was unreasonable."

*Appeal of Cheney*, 130 N.H. 589, 592, 551 A.2d 164, 166 (1988) (quoting RSA 541:13). The Council's finding that the permit modifications did not constitute a significant environmental impact was fully supported by the testimony of, among others, the then-acting director of the Division, and WOW failed to supply any evidence from the record, much less a preponderance, to the contrary. WOW's central contention with respect to this issue appears to be that the permit modifications changing the submittal schedule for groundwater monitoring criteria will adversely affect the Project's ability to accurately monitor potential groundwater contamination, but it points to nothing in the record to support this contention.

 WOW has also failed to adequately explain how the decision to begin construction in Stage II significantly affected the environment. According to the record, the only effect this modification had was to create the need for additional land fill in Stage II, where the Project had always intended to introduce land fill, and, therefore, the Council's conclusion that the modified permit utilized "substantially the same construction design as originally permitted" and created no new environmental impact did not constitute an abuse of discretion.

WOW claims, however, that a letter (introduced at the June 16 Council hearing) sent by the New Hampshire Department of Environmental Services to one of WOW's members promising that "[a]t a minimum, a public comment period will be provided for public review of these items" evidenced the existence of a significant environmental impact caused by the permit modifications. This claim, however, is without merit since the Council found that it was "not relevant to this appeal" (presumably because the letter's promise did not refer to the modifications at issue in this case), and WOW has failed to

show that this finding was unreasonable. In any case, this evidence, even if relevant to the modifications at issue, was of a limited and purely conclusory nature and thus would not be sufficient to persuade us that the Council's ultimate rulings were unreasonable. *See Appeal of Cheney*, 130 N.H. at 592, 551 A.2d at 166.

WOW also appears to take issue with the standard of review applied by the Council in determining whether or not it should have ordered a public hearing, claiming that the Council should have ordered one unless it found that the modifications caused an insignificant environmental impact. Assuming, *arguendo*, that WOW has stated the proper standard, we fail to see how it affords it any relief since it has been unable to show that the modifications at issue caused anything but an insignificant environmental impact.

■ The second issue raised by WOW, that the rehearing should have been granted because of new evidence proffered as to the potentially toxic nature of the land fill to be used by the Project, is also without merit. RSA 541:3 permits a rehearing in administrative proceedings for "good reason," but only as to matters "determined in the . . . proceeding, or covered or included in the [Council's] order." RSA 541:3. Prior to its motion for rehearing, WOW did not raise any claim in this case concerning or related to the nature of the fill material itself, and no such claim had been addressed by the Council. Thus, WOW did not effectively preserve this issue for rehearing, *see id.; cf. Appeal of Bosselait*, 130 N.H. 604, 607, 547 A.2d 682, 686 (1988) (issues must be raised at earliest possible time to allow trial forums full opportunity to come to sound conclusions and to correct claimed errors in first instance). The appellant's appeal from the Division's May 12 decision dealt exclusively with the permit modifications, none of which concerned the nature of the land fill to be used at the facility. Any concerns over the use of toxic land fill could have been raised by WOW (but apparently were not) during its appeal from the Division's decision to authorize the original permit. Furthermore, WOW apparently did raise this issue in a separate proceeding, which was pending at the time of this appeal, and has failed to persuade us that the Council should have addressed it prematurely in this proceeding.

*Affirmed.*

HORTON, J., did not sit; the others concurred.